UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERMAINE PADILLA,

                Plaintiff,

v.

JEFFREY BEARD, et al.,

                Defendants.

No.  2:14-cv-01118-KJM-CKD

ORDER

        This matter is before the court on defendants' motion to dismiss plaintiff Jermaine Padilla's complaint for failure to state a claim upon which relief can be granted.  Defs.' Mot. ECF 15.  *See* FED. R. CIV. P. 12(b)(6). Also before the court is defendants' objection to evidence.  Reply & Objection to Evidence ("Reply") ECF 18.  The court heard argument on October 10, 2014.  Lori Rifkin appeared for plaintiff and Diana Esquivel, Deputy Attorney General, appeared for defendants.  For the following reasons, defendants' motion is DENIED in part and GRANTED in part.

/////

/////

1    I.      INTRODUCTION

2           A.      Procedural Background`

3                   On May 6, 2014, plaintiff Jermaine Padilla filed a complaint against defendants

4    Jeffrey Beard, Michael Stainer, Connie Gipson, Dave Davey,[1] Ernest Wagner, M.D., M. Godina,

5    M. Drew, R. Pruneda, R. Martinez, J. Acevedo, C. Garcia, E. Silva and Does 1-10

6    ("Defendants"), all of whom are current and former California Department of Corrections and

7    Rehabilitation ("CDCR") officials, supervisors, correctional officers, or mental health staff at

8    California State Prison Corcoran ("CSP-Corcoran").  Plaintiff alleges seven causes of action:

9    (1) excessive force; (2) failure to provide adequate medical and mental health treatment;

10   (3) failure to protect from harm; (4) violation of due process; (5) discrimination on basis of

11   disability; and (6) professional negligence/medical malpractice.  Compl. ECF No. 1.  The claims

12   arise under the Eighth and Fourteenth Amendments of the Constitution, 42 U.S.C. § 1983, the

13   Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), Section 504 of the

14   Rehabilitation Act, 29 U.S.C. § 794a ("RA"), and California state law governing negligence.

15                  On June 30, 2014, defendants filed the instant motion to dismiss.  ECF No. 15.

16   Plaintiffs filed an opposition on July 28, 2014.  Opp'n ECF No. 17.  Defendants filed a reply on

17   August 4, 2014, which was accompanied by an objection to evidence.  Reply & Objection ECF

18   No. 18.

19          B.      Factual Allegations

20                  Plaintiff's complaint contains the following allegations.  Jermaine Padilla was

21   sentenced to ten months of incarceration in state prison in early 2012.  Compl. ¶ 24 ECF No. 1.

22   After serving approximately four-and-a-half months of his sentence, on or about May 3, 2012, he

23   was transferred to CSP-Corcoran.  *Id.*  Padilla was placed in an Administrative Segregation Unit

24   designated for prisoners with mental disorders or who are mentally ill.  *Id.* ¶ 25.  Padilla was in

25   treatment and on medication in the initial weeks of his incarceration at CSP-Corcoran.  *Id.* ¶¶ 28-

26   ───────────────

27          [1] In the original complaint, plaintiff names defendant "Dave Davies."  In subsequent
     moving papers, defendant and plaintiff refer to the defendant as "Dave Davey."  Moving papers
     are consistent in their references to "Davey," so the court adopts this name.  The court will
28   instruct the Clerk of the Court to revise the caption, pending objection from either party.

2

35.  Notes from mental health professionals in the first two weeks of June 2012 indicate Padilla was experiencing paranoia, and appeared psychotic, delusional, and illogical.  *Id*. ¶ 30.  On June 20, 2012, the treatment team decided to place Padilla under observation for a month.  *Id*. ¶ 33.  Health records show Padilla had been refusing medication for at least three weeks.  *Id*.  On July 1, 2012, Padilla was transferred to the Mental Health Crisis Bed unit ("MHCB") because of suicidal ideation and continued mental health issues.  *Id*. ¶ 35.  The MHCB provides temporary inpatient mental health services.  *Id*. ¶ 37.  CDCR policies governing the MHCB place a ten-day maximum limit on the length of stay before patients should be referred to inpatient treatment and hospitalization.  *Id*. ¶ 33.  Padilla spent approximately 45 days in the MHCB.  *Id*. ¶ 114.

While in the MHCB, Padilla met with defendant Dr. Wagner, a psychiatrist.  *Id*. ¶ 39.  Treatment notes throughout July indicate Padilla was "likely psychotic" "grossly disheveled," "refusing to meet with clinical staff," "refusing meals," "heard yelling" and reflected "diagnoses of schizoaffective disorder, bipolar disorder, and depression."  *Id*. ¶¶ 44, 47.  At one point, Padilla was found sitting naked in his cell in his own urine.  *Id*. ¶ 45.  Documentation from this time shows Padilla was considered for involuntary medication, though no steps were taken to initiate such treatment.  *Id*. ¶ 46.

On approximately July 18, 2012, defendant Dr. Wagner ordered Padilla discharged from the MHCB.  *Id*. ¶ 50.  That discharge order was rescinded by another unknown individual.  *Id*. ¶ 52.

Padilla's mental health continued to deteriorate.  *Id*. ¶ 53.  Treatment notes on July 21, 2012 indicate Padilla was "observed to be psychotic and gravely disabled" and "had smeared feces, peanut butter and food remains upon a dried puddle of urine, and was lying naked on the cell floor.  Id.  Treatment notes on July 23, 2012 state that Padilla's cell "was disgustingly dirty, and the mattress was smeared with filth."  *Id*. ¶ 55.  Padilla had occasional outbursts, and told staff he was hearing voices.  *Id*. ¶¶ 54, 55.  On July 24, Padilla "smeared himself with feces and flooded the cell."  *Id*. ¶ 56.  That day, defendant Dr. Wagner ordered that staff forcibly extract Padilla from his cell and administer emergency involuntary medication.  *Id*. ¶ 56.

1    CDCR supervising officers assembled an extraction team consisting of defendants

2  Godina, Drew, Pruneda, Martinez, Acevedo, Garcia, and Does 1-3.  *Id.* ¶ 59.  This extraction was

3  video recorded.  *Id.* ¶ 60.  The team, dressed in gas masks and white plastic bio-hazard suits and

4  armed with handcuffs, leg irons, batons, a body shield, and canisters of oleoresin capsicum

5  ("pepper spray") approached Padilla's cell.  They made their presence known and warned him

6  that if he did not submit to voluntary restraints, he would be "forcibly extracted and disciplined."

7  *Id.* ¶ 66.  The officers then sprayed Padilla with pepper spray for approximately eleven seconds.

8  *Id.* ¶ 68.  Officers continued to use pepper spray six separate times even as they ordered Padilla to

9  "cuff up."  *Id.* ¶¶ 71-78.  Padilla appeared confused and frightened, and defendant Doe 1 recorded

10  in the incident report of this extraction that Padilla "was clearly not capable of submitting to

11  handcuffs due to his mental state."  *Id.* ¶ 77.

12    Eventually, the officers entered the cell and used the body shield to pin Padilla to

13  the floor.  *Id.* ¶ 80.  Padilla was restrained and held down by the officers, and the team dragged

14  him naked along the floor and placed him in arm and leg restraints.  *Id.* ¶¶ 83-85.  They wheeled

15  Padilla naked on a gurney into an empty room.  *Id.* ¶ 85.  They then transferred him to the

16  restraint bed and locked him in 5-point restraints, as instructed by defendant Dr. Wagner.  *Id.*

17  ¶ 86.  Padilla can be heard in the video pleading and asking for help or someone to listen.  *Id.*

18  ¶ 89.  Defendant Dr. Wagner was present and observed the entire incident.  *Id.* ¶ 96.  No one

19  responded to Padilla's pleas, or addressed him while he was in the restraints, with the exception

20  of one officer telling him to "relax."  *Id.* ¶¶ 89-94.

21    Padilla was kept in the restraints for a continuous 72 hours.  *Id.* ¶ 99.  He was not

22  decontaminated, nor was he allowed to stand up and use the bathroom, so he was forced to urinate

23  on himself, the bed, and the floor.  *Id.* ¶ 101.  Padilla repeatedly requested to have the restraints

24  removed.  *Id.* ¶ 102.  According to treatment notes, defendant Dr. Wagner ordered the

25  continuation of the restraints because Padilla "refused to take responsibility for the incident."  *Id.*

26  ¶ 104.  After 72 hours, another psychiatrist ordered Padilla's release from the restraints.  *Id.*

27  ¶ 107.  A video of this incident was viewed by CDCR officials, as required by CDCR policy, but

28  no corrective action or investigation was initiated.  *Id.* ¶ 110.

1      After the restraints were removed, Padilla continued to be housed in the MHCB.

2 *Id.* ¶ 118.  On or about August 14, 2012, Padilla was re-housed in the Administrative Segregation

3 Unit.  *Id.*  Over the next few months, defendants moved Padilla back and forth between the

4 Administrative Segregation Unit and the MHCB.  His mental health continued to deteriorate, and

5 on October 3, 2012, Padilla was referred to an inpatient hospital.  *Id.* ¶ 124.  He was transferred to

6 the hospital a month later, on November 7, 2012.  *Id.*  There, Padilla's mental health stabilized.

7 *Id.* ¶ 125.

8      In connection with the July 24, 2012 extraction, Padilla was charged with a rule

9 violation for "obstructing a peace officer in the performance of his duties in the use of force."  *Id.*

10 ¶ 127.  As part of the hearing process, a CDCR clinician completed a mental health assessment

11 and found, in relevant part, that Padilla "didn't seem to understand consequences of not

12 complying with a custody officer."  *Id.* ¶ 128.  Despite this assessment, Padilla was found guilty

13 and assessed 90 days loss of credit and 30 days loss of privileges, including loss of dayroom,

14 TV/radio, visits, family visits, special purchase, telephone, and quarterly package.  *Id.* ¶ 129.

15 Throughout Padilla's 2012 incarceration, he was repeatedly charged and found guilty of rule

16 violations related to his behavior, which extended his time of incarceration.  *Id.* ¶ 130.  He was

17 released on February 14, 2013.  *Id.* ¶ 8.

18      As a result of the preceding incidents, Padilla experienced and continues to

19 experience severe physical, mental, and emotional pain and suffering, and these actions

20 exacerbated his mental illness.  *Id.*  ¶¶ 132-133.  He seeks declaratory relief, compensatory

21 damages, punitive damages, reasonable cost of the suit and attorney's fees and any further relief

22 the court may deem just, proper, and appropriate.  *Id.* at 31.

23 II.      OBJECTION TO EVIDENCE

24      Plaintiff has submitted with his opposition a declaration from his attorney.

25 Plaintiff requests the court consider the declaration in its determination of plaintiff's compliance

26 with the California Tort Claims Act.  Defendants object and move to strike the declaration as

27 improper extrinsic evidence.  *See* ECF No. 17-1.  A court may consider certain materials —

28 documents attached to the complaint, documents incorporated by reference in the complaint, or

1   matters of judicial notice — without converting a motion to dismiss into a motion for summary

2   judgment.  *See Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).  In its discretion, the

3   court denies the motion to strike and considers the declaration for the limited purpose of

4   determining whether granting plaintiff leave to amend to plead the facts in the declaration would

5   be futile.

6   III.     LEGAL STANDARD FOR MOTION TO DISMISS

7         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

8   complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

9   "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

10   cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

11         Although a complaint need contain only "a short and plain statement of the claim

12   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to

13   dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

14   to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

15   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

16   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

17   conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id*. (quoting

18   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

19   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

20   its judicial experience and common sense."  *Id*. at 679.  Ultimately, the inquiry focuses on the

21   interplay between the factual allegations of the complaint and the dispositive issues of law in the

22   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

23         In making this context-specific evaluation, this court "must presume all factual

24   allegations of the complaint to be true and draw all reasonable inferences in favor of the

25   nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule

26   does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478

27   U.S. 265, 286 (1986), quoted in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict

28   matters properly subject to judicial notice," or to material attached to or incorporated by reference

1   into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A

2   court's consideration of documents either attached to a complaint or incorporated by reference, or

3   of matters of judicial notice, will not convert a motion to dismiss into a motion for summary

4   judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

5   IV.      DISCUSSION

6            A.      Factual Allegations Against Silva and Davey

7                    Defendants contend plaintiff has not stated any cognizable claims against Davey

8   and Silva because plaintiff has not pled sufficient facts to show their participation in the alleged

9   constitutional violations.

10                   1.      Failure to plead facts against Davey in his official capacity under § 1983

11                   Plaintiff alleges constitutional violations by Davey in his official capacity as the

12  current CSP-Corcoran Warden and successor to Warden Gipson.  Defendants argue all claims

13  against defendant Davey should be dismissed because plaintiff has not pled any personal

14  knowledge or ratification of others' relevant actions on the part of Davey.  In an official-capacity

15  action in federal court, death or replacement of the named official results in automatic substitution

16  of the official's successor in office.  *See* FED. R. CIV. P. 25(d)(1); *see also Kentucky v. Graham*,

17  473 U.S. 159, 166 (1985).  The motion to dismiss against Davey in his official capacity is denied.

18                   2.      Failure to plead facts against Silva

19                   Plaintiff has not alleged any facts with respect to Silva in the body of the

20  complaint.  Plaintiff concedes Silva was mistakenly omitted from the body of the complaint, but

21  represents he intended to include allegations against Silva as a member of the extraction team.

22  Opp'n at 20.  The motion to dismiss against Silva for failure to state a claim is granted, with leave

23  to amend.

24           B.      Official Capacity Claims Against Stainer, Beard, and Davey

25                   Plaintiff's complaint states claims against defendants Stainer, Beard, and Davey [2]

26  in their official capacities for violations of the Eighth Amendment and the Fourteenth

27  _____

28       [2] Defendant Beard is the "highest-level official" in CDCR and is responsible for
     administering and overseeing the operation of CDCR.  Compl. ¶ 9.  Defendant Stainer is the

7

1   Amendment.  Compl. ¶¶ 138-189.  Defendants seek dismissal of these claims because the

2   Eleventh Amendment bars actions against individuals in their official capacity for declaratory

3   relief that is not prospective.  At hearing, plaintiff withdrew his claims against Stainer, Beard,

4   Gipson and Davey in their official capacities for declaratory relief.   In light of plaintiff's

5   withdrawal, the motion is granted as to these claims with prejudice.

6           C.       Excessive Force Claims Against Beard and Stainer.

7           Plaintiff alleges excessive force claims against Beard and Stainer in their

8   individual capacities.  Defendants contend plaintiff fails to allege sufficient facts to rely on

9   supervisory liability in proceeding against Beard and Stainer.  Defs.' Mot. at 7.  Plaintiff

10  acknowledges Beard and Stainer did not personally participate in the alleged excessive use of

11  force against plaintiff, but says they "ratified" its use.  Compl. ¶¶ 151-152.

12          It is well-settled supervisors may be individually liable in section 1983 suits when

13  culpable action, or inaction, is directly attributed to them.  *Starr v. Baca*, 652 F.3d 1202, 1205-06

14  (9th Cir. 2011).  In *Starr*, the court explained: "We have never required a plaintiff to allege that a

15  supervisor was physically present when the injury occurred."  It went on, "[i]n *Larez v. City of*

16  *Los Angeles*, 946 F.2d 630 (9th Cir. 1991), we explained that to be held liable, the supervisor

17  need not be 'directly and personally involved in the same way as are the individual officers who

18  are on the scene inflicting constitutional injury.'" *Id*. (internal citations omitted).  Rather, a

19  supervisor's participation can include his "own culpable action or inaction in the training,

20  supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations

21  of which the complaint is made," or "conduct that showed a reckless or callous indifference to the

22  rights of others."  *Id*. (internal citations omitted).

23          Taking all facts pled by the plaintiff in his complaint as true, Beard and Stainer

24  had personal knowledge of the use of excessive force on the plaintiff, and failed to correct or

25  reprimand those directly responsible for the use of force.  Compl. ¶¶ 9-10, 111, 151-152.  Under

26  _____

27  Director of the Division of Adult Institutions for CDCR and is responsible for "supervising the
    day-to-day administration" and "overseeing implementing policies, procedures and practices in
    these facilities."  *Id*. ¶ 10.  Davey is the current Warden at CSP-Corcoran. *Id*. ¶ 4.

28

1    *Starr* and *Larez*, failure to correct, change, or respond to actions that constitute excessive force

2    may qualify as ratification and subject defendants to liability.  The motion to dismiss claims

3    against Beard and Stainer is denied.

4            D.      Deliberate Indifference to Medical/Mental Health Treatment

5            Plaintiff asserts claims against all defendants for failure to provide adequate

6    medical and mental health treatment in violation of the Eighth and Fourteenth Amendments.

7    Compl. ¶¶ 155-170.  Defendants seek to dismiss these claims as to all defendants with the

8    exception of Dr. Wagner.  Defendants allege that plaintiff does not plead any specific facts

9    showing defendants other than Dr. Wagner interfered with adequate provision of health care or

10   had knowledge that plaintiff needed health care. Defs.' Mot. 8-9.  This is not correct.  Plaintiff

11   pleads he was visibly disturbed and asking for help throughout the extraction, was

12   unconstitutionally denied adequate health treatment, and, in contravention of the prison's own

13   policies, failed to receive a higher level of mental health treatment, despite documentation such

14   treatment was needed.  Compl. ¶¶ 156-160.  Further, plaintiff alleges defendant officials have

15   been on notice since at least 1994 as to what necessary care is required when disciplining

16   prisoners with mental illness, and alleges defendants failed to follow such requirements. Compl.

17   ¶ 160.

18           In *Farmer v. Brennan*, the Court held a "prison official may be held liable under

19   the Eighth Amendment for denying humane conditions of confinement only if he knows that

20   inmates face a substantial risk of serious harm and disregards that risk by failing to take

21   reasonable measures to abate it."  511 U.S. 825 (1994).  In *Estelle v. Gamble*, the Court

22   distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce]

23   in diagnosing or treating a medical condition," holding that only the former violates the

24   Constitution.  429 U.S. 97, 104–05 (1976).  In short, Eighth Amendment liability requires "more

25   than ordinary lack of due care for the prisoner's interests or safety."  *Id*.  In determining deliberate

26   indifference, the court scrutinizes the particular facts and looks for substantial indifference in the

27   /////

28

1   individual case, indicating more than mere negligence or isolated occurrences of neglect.  To

2   prevail on an Eighth Amendment claim for failure to provide adequate care,

3           first, the plaintiff must show a serious medical need by
4           demonstrating that failure to treat a prisoner's condition could result
            in further significant injury or the unnecessary and wanton
5           infliction of pain. Second, the plaintiff must show the defendant's
            response to the need was deliberately indifferent.
6

7   *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations

8   omitted).   The second prong is satisfied "by showing (a) a purposeful act or failure to respond to

9   a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Id.*

10  Indifference may appear when prison officials deny, delay or intentionally interfere with medical

11  treatment, or it may be shown by the way in which prison physicians provide medical care.  *Id.*

12          Officials need not be medical providers to be found deliberately indifferent to a

13  prisoner's medical needs.  Fundamentally, a plaintiff must show that a defendant was deliberately

14  indifferent to his needs, and such indifference was not an isolated incident in plaintiff's treatment.

15  *Id.*  Officials may be deliberately indifferent to a prisoner's serious medical needs if "they were

16  aware of the harmful effects of the pepper spray and of the inadequacy of their ventilation

17  methods and yet purposefully refused to provide showers, medical care, or combative instructions

18  or to develop an adequate policy to address obvious risks."  *Clement v. Gomez*, 298 F.3d 898, 904

19  (9th Cir. 2002).

20          Padilla sufficiently pleads the officials here were aware of his medical and mental

21  health needs, and the treatment of his needs was inadequate.  Plaintiff also sufficiently pleads

22  inadequate medical treatment by the extraction team.  Defendants' motion to dismiss the claims

23  or deliberate indifference to plaintiff's medical needs is denied.  These claims may be included in

24  an amended complaint.

25          E.   Failure to Protect

26          Plaintiff alleges constitutional violations under the Eighth Amendment for failure

27  to protect from harm.  Compl. ¶¶ 171-181.  Defendants argue plaintiff has not alleged specific

28  facts for this claim against Gipson, Beard and Stainer.

1    Plaintiff specifically contends all defendants failed to protect plaintiff from harm

2    "by deliberately withholding necessary mental health treatment and allowing [his] mental health

3    to decompensate" and "by using unreasonable and unnecessary force and restraint against him."

4    *Id*. ¶¶ 172-173.  Plaintiff pleads each defendant "knew that other defendants were using, or were

5    threatening to use, unreasonable force and restraint against him" and could have stopped this

6    action "but refused or failed to do so." *Id*. ¶¶ 173-174.  Gipson, Beard and Stainer, in their

7    supervisory roles, were in the position to know of the methods used to extract Padilla from his

8    cell, and ratified the use of such methods by failing to take any corrective action.  *Id*. ¶¶ 111, 178.

9    A supervisor may be held liable when he or she is put on notice of wrongful

10    conduct and fails to investigate or correct the violation.  *Taylor v. List*, 880 F.2d 1040, 1046 (9th

11    Cir. 1989).  Where a plaintiff alleges a constitutional deprivation due to a failure to train or

12    supervise, to prevail the plaintiff must demonstrate an affirmative link between the deprivation

13    and the adoption of a plan or policy, express or otherwise, showing the authorization or approval

14    of such misconduct.  *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369–70 (9th Cir. 1986),

15    *disapproved of on other grounds Canton v. Harris*, 489 U.S. 378 (1989).  The required causal

16    connection between supervisory conduct and the deprivation of a constitutional right is

17    established either by direct personal participation or by setting in motion a "series of acts by

18    others which the actor knows or reasonably should know would cause others to inflict the

19    constitutional injury."  *Id*. at 1370.

20    Plaintiff's claims against Beard, Stainer and Gipson rely on a theory of supervisory

21    liability.  "'Supervisory liability exists even without overt personal participation in the offensive

22    act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of

23    constitutional rights and is the moving force of a constitutional violation.'"  *Clement*, 298 F.3d at

24    905 (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc)).

25    Where a complaint "specifically alleges . . . that [a supervisory defendant] was given notice, in

26    several reports, of systematic problems," and he "did not take action to protect inmates under his

27    care despite the dangers . . . of which he had been made aware," such allegations "plausibly

28    /////

11

1   suggest that [he] acquiesced in the unconstitutional conduct of his subordinates, and was thereby

2   deliberately indifferent to the danger posed to [plaintiff]."  *Starr*, 652 F.3d at 1216.

3          Here, plaintiff sufficiently states a claim of supervisory liability by pleading

4   defendants' implementation of policies that authorized the excessive use of force against plaintiff

5   and a subsequent failure to investigate the alleged constitutional violations.  Defendant's motion

6   to dismiss the failure to protect claims against Beard, Stainer, and Gipson is denied.

7          F.     Procedural Due Process

8          Plaintiff alleges his rights to procedural due process were violated during the

9   disciplinary process by defendants Beard, Stainer, Gipson, Davey, and Doe 4.[3]  Compl. ¶ 183.

10  Plaintiff alleges these defendants violated his due process rights when he was found guilty of rule

11  violations without sufficient regard for his mental illness.  Plaintiff alleges such disregard for

12  mental illness is in violation of prison policies which require that "disability be taken into account

13  and that the effect of mental illness be considered."  Opp'n at 16.

14         "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

15  panoply of rights due a defendant in such proceedings does not apply."  *Dunn v. Swarthout*, 2:11-

16  CV-2731 JAM GGH, 2013 WL 4654550 (E.D. Cal. Aug. 29, 2013) (quoting *Wolff v. McDonnell*,

17  418 U.S. 539, 556 (1974)).  With respect to prison disciplinary proceedings, the minimum

18  procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24

19  hours between the time the prisoner receives written notice and the time of the hearing, so that the

20  prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they

---

21         [3] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through
22  discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the
    alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v.*
23  *Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637,
    642 (9th Cir. 1980)) (modification in the original). Plaintiff is cautioned, however, that such
24  defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or
    that the complaint would be dismissed on other grounds.'"  *Id.* (quoting *Gillespie*, 629 F.2d at
25  642). Plaintiff is further cautioned that Federal Rule of Civil Procedure 4(m), which states that
    the court must dismiss defendants who have not been served within 120 days after the filing of
26  the complaint unless plaintiff shows good cause, is applicable to doe defendants.  *See Glass v.*
    *Fields*, No. 1:09-cv- 00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31,
27  2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2–4
28  (N.D. Cal. Sep. 27, 2011).

1    rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses

2    and present documentary evidence in his defense, when permitting him to do so would not be

3    unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the

4    prisoner where the prisoner is illiterate or the issues presented are legally complex.  *Wolff*, 418

5    U.S. 539 at 563–71.  Confrontation and cross examination are not generally required.  *Id*. at 567.

6            Plaintiff does not allege in his complaint that he was deprived of any of the *Wolff*

7    procedural requirements and at hearing his counsel clarified he is not claiming any *Wolff*

8    violations.  The complaint pleads that defendants did not comply with prison policies requiring

9    plaintiff's mental illness be considered in disciplinary proceedings, but does not cite to or

10   reference the specific policies.  These allegations may be appropriately pled in the context of an

11   Eighth Amendment claim, but plaintiff has not stated a claim for violations of procedural due

12   process.  Defendants' motion to dismiss these claims is granted with prejudice.

13           G.      ADA/RA

14           Plaintiff brings a claim against all defendants for discrimination on the basis of

15   disability in violation of the ADA and Section 504 of the RA.  Compl. ¶¶ 190-196.  In his

16   opposition to defendants' motion to dismiss, plaintiff withdraws these claims against defendants

17   sued in an individual capacity.  Opp'n at 16.  This court will consider only plaintiff's claims

18   against Beard, Stainer, and Davey in their official capacities.

19           Plaintiff alleges defendants discriminated against him and denied him benefits by

20   (1) failing to provide proper and reasonable training to CDCR officers in how to respond to

21   persons with physical and mental impairments; (2) failing to respond reasonably in dealing with a

22   mentally ill person who was experiencing an episode of psychological distress; and (3) by

23   disciplining plaintiff for actions found by CDCR staff to be related to his mental illness and

24   imposing a punishment found by CDCR's own mental health staff to be detrimental to plaintiff's

25   mental health.  Compl. ¶ 192.  Plaintiff further alleges as a result of his disability, he was

26   disciplined, and that discipline included denial of benefits (dayroom, TV/video, visits, special

27   purchase, telephone, and quarterly package) to which plaintiff was entitled.  *Id*. ¶ 129.  His

28   discipline was based on his lack of compliance with officers during his extraction.  *Id*. ¶ 127.  His

1   mental health assessment included the determination he was unable "to understand consequences

2   of not complying with a police officer."  *Id.* ¶ 128.

3          To state a claim under the ADA, a plaintiff must show: (1) he is a "qualified

4   individual with a disability"; (2) he was either excluded from participation in or denied the

5   benefits of a public entity's services, programs or activities, or was otherwise discriminated

6   against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by

7   reason of his disability. *See* 42 U.S.C. § 12132; *Does 1-5 v. Chandler*, 83 F.3d 1150, 1154-55

8   (9th Cir. 1996).  Similarly, under the RA, a plaintiff must show: (1) he is an "individual with a

9   disability"; (2) he is "otherwise qualified" to receive the benefit; (3) he was denied the benefits of

10  the program solely by reason of his disability; and (4) the program receives federal financial

11  assistance. *See* 29 U.S.C. § 794 (emphasis added); *Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th

12  Cir. 1988).

13         Plaintiff pleads that his punishment could be attributed to his disability, which

14  affects his ability to comply with officers.  Plaintiff adequately pleads he was denied benefits,

15  services and activities that are protected by the ADA as a result of his discipline.  *Pennsylvania*

16  *Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many

17  recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of

18  which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be

19  excluded from participation in)").  As to the federal assistance requirement of the RA, defendants

20  have not disputed the federal government assists the CDCR.  Defendants' motion to dismiss the

21  claims under the ADA and RA is denied.

22         H.     Professional Negligence/Medical Malpractice.

23                1.     California Tort Claims Act

24         Defendant argues plaintiff failed to plead facts indicating compliance with the

25  California Tort Claims Act ("CTCA").  Plaintiff acknowledges such compliance is a prerequisite,

26  and concedes he neglected to include such facts in his initial complaint.  With his opposition,

27  plaintiff offers a declaration he did in fact file a request to present a late claim with the California

28  Victim Compensation and Government Claims Board on January 10, 2014.  Opp'n at 18.  The

1    Board denied application for leave to present a late claim and rejected the claim on April 18,

2    2014.  *Id.* at 19.  Plaintiff requests leave to amend the complaint to include these facts.

3            The CTCA requires a tort claim against a public entity or its employees be

4    presented to the California Victim Compensation and Government Claims Board, formerly

5    known as the State Board of Control, no more than six months after the cause of action accrues.

6    CAL. GOV'T CODE §§ 905.2, 910, 911.2, 945.4, 950–950.2.  Presentation of a written claim, and

7    action on or rejection of the claim, are conditions precedent to suit.  *State v. Superior Court of*

8    *Kings County (Bodde)*, 32 Cal. 4th 1234, 1239 (2004); *Shirk v. Vista Unified School District*, 42

9    Cal. 4th 201, 209 (2007).  "[F]ailure to allege facts demonstrating or excusing compliance with

10   the requirement subjects a complaint to general demurrer for failure to state a cause of action."

11   Bodde, 32 Cal. 4th at 1239.

12           Because plaintiff's complaint does not include facts to suggest compliance with

13   the CTCA, the court will dismiss plaintiff's negligence claims against defendant Dr. Wagner with

14   leave to amend.

15                   2.      Punitive Damages

16           Plaintiff includes a request for punitive damages in his professional negligence

17   claim against Dr. Wagner.  Compl. ¶ 202.  Defendants contend this claim for relief is improper

18   because plaintiff did not seek leave of court to plead punitive damages in accordance with

19   California Civil Code of Civil Procedure § 425.13.  Defs.' Mot. at 10.  Plaintiff argues, relying on

20   a decision from the Eleventh Circuit and one judge of this district, section 425.13 does not apply

21   in federal court because it is in direct conflict with Federal Rule of Civil Procedure 8(a)(3), which

22   allows a plaintiff to request all relief sought in his initial complaint.  Opp'n at 19.

23           Courts are split on the question whether state procedural rules governing requests

24   for damages conflict with Federal Rule of Civil Procedure 8(a)(3).  Generally, when a procedural

25   state law conflicts with a Federal Rule in federal court, the federal law applies.  *Erie R. R. v.*

26   *Tompkins*, 304 U.S. 64 (1938); *see also McCalla v. Royal MacCabees Life Ins. Co*., 369 F.3d

27   1128, 1135 (9th Cir. 2004) ("When a Federal Rule of Civil Procedure is on point, it, not the state

28   law, governs, so long as it does not run afoul of the Rules Enabling Act.").

1    Rule 8(a)(3) provides a plaintiff may request in her initial complaint "a demand for

2 the relief sought, which may include relief in the alternative or different types of relief."  FED. R.

3 CIV. P. 8(a)(3).  California Civil Procedure Code section 425.13, on the other hand, provides that

4 "[i]n any action for damages arising out of the professional negligence of a health care provider,

5 no claim for punitive damages shall be included in a complaint or other pleading unless the court

6 enters an order allowing an amended pleading that includes a claim for punitive damages to be

7 filed."  CAL. CIV. PROC. CODE § 425.13(a).  To obtain an order authorizing a request for punitive

8 damages under § 425.13, the court must determine on the plaintiff's motion "that the plaintiff has

9 established that there is a substantial probability that the plaintiff will prevail on the claim."  *Id.*

10    Within the Ninth Circuit, district courts have differed on whether the California

11 statute is applicable in federal court.  *See Estate of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F.

12 Supp. 2d 1101, 1119 (E.D. Cal. 2013) (collecting cases).  Courts applying the statute either have

13 found it to be "intimately bound" to state substantive law and therefore a substantive, rather than

14 procedural rule, or have found the plaintiff's punitive damages claims largely arise under state

15 law and the state law should therefore apply.  *See, e.g., Thomas v. Hickman*, No. CV F06-

16 0215AWI SMS, 2006 WL 2868967, at *41 (E.D. Cal. Oct. 6, 2006) ("The legislative intent

17 behind Section 425.13 shows the rule to be intimately bound to the state substantive causes of

18 action for professional negligence."); *Rhodes v. Placer Cnty.*, No. 2:09-CV-00489 MCE KJN,

19 2011 WL 1302240, at *21 (E.D. Cal. Mar. 31, 2011), *adopted,* No. 2:09-CV-00489-MCE, 2011

20 WL 1739914 (E.D. Cal. May 4, 2011) (§ 425.13 applicable because plaintiff's punitive damages

21 claims arise from state law claims).  *Cf. also Golder Associates, Inc. v. Edge Envtl., Inc*., No.

22 CIV.A. 06CV01260 WYDBN, 2007 WL 987458, at *5 (D. Colo. Mar. 30, 2007) (giving effect to

23 similar Colorado statute; dismissing plaintiff's request for punitive damages without prejudice).

24    Courts declining to apply section 425.13 find it is a procedural rule governing no

25 substantive rights and in direct conflict with a Federal Rule.  *See, e.g., Jackson v. E. Bay Hosp*.,

26 980 F. Supp. 1341, 1352 (N.D. Cal. 1997) ("The requirement is essentially a method of managing

27 or directing a plaintiff's pleadings, rather than a determination of substantive rights."); *Burrows v.*

28 *Redbud Cmty. Hosp. Dist.*, 188 F.R.D. 356, 361 (N.D. Cal. 1997) ("[S]ection 425.13 is a

1   procedural rule for managing and directing pleadings: it does not create substantive limits on the

2   damages a plaintiff may seek."); *see also Estate of Prasad*, 958 F. Supp. 2d at 1119.

3           The Ninth Circuit has not resolved the split among its district courts.  The only

4   federal appellate court to address the question is the Eleventh Circuit.  It considered a Florida

5   state rule similar to section 425.13, in that it required leave of court to plead punitive damages,

6   and found it  to be a procedural rule; the rule thus was in conflict with Federal Rule 8(a)(3), and

7   inapplicable in federal court.  *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (1999), *vacated*

8   *on other grounds*, 204 F.3d 1069, 1072 (11th Cir. 2000).

9           In the absence of direction from the Ninth Circuit, this court is persuaded by those

10  of its sister courts that have found section 425.13 in conflict with Rule 8(a)(3) and inapplicable in

11  federal court.  The requirements of section 425.13 do not affect or augment a plaintiff's

12  substantive right to relief, but interpose procedural requirements dictating how and when she may

13  plead her request for relief.

14          The defendants' motion to dismiss plaintiffs' prayer for punitive damages for

15  failure to comply with section 425.13 is denied.

16  V.      CONCLUSION

17          For the foregoing reasons, the court orders as follows:

18      1.      Defendants' motion to dismiss is GRANTED without leave to amend as to:

19              a.   plaintiff's claims against Beard, Stainer and Davey in their official capacities

20                   under Section 1983; and

21              b.  plaintiff's claims of violations of procedural due process.

22      2.      Defendants' motion to dismiss is GRANTED with leave to amend as to:

23              a.      plaintiff's claims against defendant Silva; and

24              b.      plaintiff's claims of negligence/medical malpractice against Dr. Wagner.

25      3.      Defendant's motion is DENIED in all other respects.

26  /////

27  /////

28  /////

17

1        4.      Plaintiff has twenty-one (21) days from the date of this order to file an amended

2    complaint.

3                IT IS SO ORDERED.

4    DATED:  November 12, 2014.

5

6

7                                            UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28