1  Lori Rifkin, Esq. [S.B. # 244081]
   HADSELL STORMER & RENICK LLP
2  4300 Horton Street, #15
   Emeryville, California 94608
3  Telephone: (415) 685-3591
   Facsimile: (626) 577-7079
4  Email: lrifkin@hadsellstormer.com
5
   Dan Stormer, Esq. [S.B. #101967]
6  Caitlan McLoon, Esq. [S.B. #302798]
   HADSELL STORMER & RENICK LLP
7  128 N. Fair Oaks Avenue
   Pasadena, California 91103
8  Telephone: (626) 585-9600
   Facsimile: (626) 577-7079
9  Emails: dstormer@hadsellstormer.com
    cmcloon@hadsellstormer.com
10
11 Attorneys for Plaintiff
12

13                **UNITED STATES DISTRICT COURT**

14      **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

15

| | |
|---|---|
| 16 Jermaine Padilla, | Case No.: 2:14-cv-01118-KJM-CKD |
| 17                 Plaintiff, | [Assigned to the Honorable Kimberly J. Mueller– Courtroom 3] |
| 18         v. | |
| 19 Jeffrey Beard, et al., | **PLAINTIFF JERMAINE PADILLA'S** |
| 20                 Defendants. | **SUPPLEMENTAL PRETRIAL BRIEF RE:** *COLEMAN* **ISSUES** |
| 21 | DATE:          April 17, 2017 |
| 22 | TIME:          9:00 a.m. CRTRM:       3 |
| 23 | |
| 24 | Complaint Filed:        May 6, 2014 Trial Date:              April 17, 2017 |

25

26

27

28

Building on Plaintiff's request for judicial notice (ECF No. 166), Plaintiff's motion *in limine* 7 to exclude evidence and argument relating to the constitutionality of CDCR use of force policies, procedures, and practices (ECF No. 173), Plaintiff's previously proposed jury instructions (ECF No. 218), and discussion with the Court during the April 7, 2017 pretrial conference, this supplemental brief addresses the legal and practical applications of decisions in the *Coleman* case to trial in the instant case.  Plaintiff first sets forth the relevant *Coleman* findings at issue, then discusses the application of those findings to evidentiary considerations and jury instructions in this case, and finally addresses the single objection Defendants raised in their opposition to Plaintiff's motion *in limine* 7.

The key points as to the relevance of *Coleman* findings in this litigation are: 1) the *Coleman* decisions set forth legal standards applicable to Plaintiff's claims; 2) the 1995 *Coleman* findings, as detailed below, provided notice to policymaker Defendants of their legal obligations with respect to treatment of mentally ill inmates including Plaintiff; and 3) the 2013 and 2014 *Coleman* findings that the policies and practices governing Plaintiff's cell extraction were unconstitutional, as detailed below, have preclusive effect in this case and thus preclude Defendants from offering evidence intended to show or suggest otherwise.

## I.   Relevant *Coleman* Findings

### A.   1995 *Coleman* Findings

The *Coleman v. Brown* case, E.D. Cal. Case No. 2:90-cv-090520-KJM-DB, originating as *Coleman v. Wilson*, is centrally relevant to the present action.  The Court's decisions in *Coleman*, beginning with its 1995 findings of Eighth Amendment violations in the provision of mental health treatment to the class of prisoners with serious mental illness in California's prisons, set forth legal findings and standards governing the policies, procedures, and practices of CDCR through the present day.  The Court's 1995 decision also provided notice to the California prison administrators and supervisors running CDCR from that point forward of basic requirements for treatment and interactions with class members and deficiencies in their policies and practices resulting in constitutional violations.  Plaintiff in this case, Jermaine Padilla, was a *Coleman* class member while he was incarcerated from 2011-2013 and subjected to the actions and omissions giving rise to the claims at bar.

The specific findings from the 1995 *Coleman* decision, *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995) that are relevant to this case, and that are the basis for Plaintiff's requested jury instructions are:

- Seriously mentally ill inmates in the California Department of Corrections "daily faced an objectively intolerable risk of harm as a result of gross systemic deficiencies through the Department." *Id.* at 1316.

- California government officials responsible for running the Department of Corrections were deliberately indifferent to the serious mental health needs and risk of harm to inmates. *Id.* at 1319 ("The court repeats, the evidence of defendants' knowledge of the gross inadequacies in their system is overwhelming.  The risk of harm from these deficiencies is obvious.  The actual suffering experienced by mentally ill inmates is apparent.  In the face of this reality, the court finds that defendants' conduct constitutes deliberate indifference to the serious medical needs of the plaintiff class.").

- *Coleman* Defendants were deliberately indifferent to the serious medical needs of the plaintiff class by:

  - Failing to provide timely access to adequate medical care, including inpatient hospitalization, resulting in exacerbation of illness and patient suffering; 1308-1309

  - Failing to provide involuntary medication when necessary for the treatment of gravely mentally ill inmates; *id.* at 1311-12.

  - Failing to adopt adequate protocols to govern the use of mechanical restraints on mentally ill inmates and to require appropriate follow-up psychiatric care after restraints have been used; *id.* at 1313-14.

  - Failing to adequately train custody staff in identifying the signs and symptoms of mental illness, resulting in custody staff subjecting mentally ill inmates who act out to punitive measures without regard to their mental status; *id.* at 1320.

  - Treating mentally inmates with punitive measures to control the inmates' behavior without regard to the cause of the behavior, the efficacy of such measures, or the impact of those measures on the inmates' mental illnesses; *id.*

  - Subjecting inmates to the use of weapons without regard to whether their behavior was caused by a psychiatric condition and without regard to the impact of those weapons on their psychiatric condition. *id.* at 1323.

**B.**     **2013 and 2014 *Coleman* Findings**

In 2013, the *Coleman* Court considered the question of whether California prison officials had remedied the constitutional violations in the provision of mental health treatment to class members identified in 1995.  In a 2013 ruling, *Coleman v. Brown*, 938 F.Supp.2d 955 (E.D. Cal. 2013), the *Coleman* Court found that the violations were ongoing, and in a 2014 ruling, 28 F.Supp.3d 1068 (E.D. Cal. 2014), the *Coleman* Court specifically found that CDCR's policies, procedures, and practices governing use of force and discipline remained unconstitutional, and that California prison officials continued to use punitive measures in a manner deliberately indifferent to class members' mental health needs.  This ruling was based on evidence of policies, procedures, and practices in effect during Plaintiff Jermaine Padilla's incarceration from 2011-2013, specifically including Defendants' cell extraction and discipline of Mr. Padilla.

The specific findings from the 2013 and 2014 *Coleman* decisions that are relevant to this case, and that are the basis for Plaintiff's requested jury instructions are:

- California government officials had failed to remedy the Eighth Amendment violations found in 1995, and continued to be deliberately indifferent to the serious mental health needs of inmates and risk of harm to these inmates. 938 F.Supp.2d at 989.
- CDCR policies, procedures, and practices for use of force, including those governing Mr. Padilla's 2012 cell extraction, continued to violate the Eighth Amendment. 28 F. Supp.3d at 1080-81.
- The policies and procedures used by California government officials still permitted use of force against seriously mentally ill inmates without regard to a) whether their behavior was caused by mental illness, and b) the serious psychiatric harm caused by the use of this force on inmates with mental illness. *id.* at 1080.
- CDCR's use of force policies and procedures for cell extractions of mentally ill inmates continued to demonstrate deliberate indifference by:
  - Allowing for use of weapons including OC pepper spray by custody staff without regard to the impact of those weapons on inmates' psychiatric conditions; *id.* at 1081.
  - Failing to require consideration of an inmate's ability to conform his or her conduct to the order or directive giving rise to the use of force; *id.* at 1086.

- Failing to consider the role of mental illness in an inmate's ability to comply with staff directives; *id.* at 1087.

- Failing to require alternatives to use of force on seriously mentally ill inmates where there is no imminent threat to life and force will exacerbate an inmate-patient's mental illness. *id.* at 1087.

## II.    Evidentiary Issues

For the reasons set forth in detail in Plaintiff's motion *in limine* 7 (ECF No. 173), the *Coleman* Court's 2013 and 2014 legal findings that California government officials continued to be deliberately indifferent to the mental health needs of class members (including Plaintiff), including through their use of force policies, procedures, and practices, apply to this action.  It is undisputed that these are the policies, procedures, and practices under which the individual Defendants in this case acted.  Issue preclusion therefore applies to prohibit the re-litigation of the constitutionality (or adequacy, or appropriateness, or any such synonym for meeting the standard of care) of these policies, procedures, and practices.[1]  As a matter of law, these individual Defendants adopted, implemented, failed to correct, and/or acted pursuant to unconstitutional policies and procedures.  The evidence presented by Defendants at trial in the instant case must be relevant to the question of whether these individual Defendants were deliberately indifferent in their actions or omissions in adopting, implementing, failing to correct, and/or acting pursuant to these policies, *not* whether the policies themselves were acceptable.

As set forth in Plaintiff's motion, this means that:

- The issue of the constitutionality of the use of force policies, procedures, and practices pursuant to which Defendants executed Mr. Padilla's cell extraction has already been decided.  These policies, procedures, and practices were unconstitutional.  This finding also necessarily means that these policies, procedures, and practices—which resulted in violations of constitutional rights—were not adequate or appropriate.  This may not be re-litigated in this case.

---

[1] Defendants made no legal argument in their opposition to Plaintiff's motion in *limine* 7 (ECF No. 241) as to why issue preclusion does not apply, nor respond to any of Plaintiff's legal analysis in his motion.

- The issue of whether prison officials, doctors, or staff may use punitive measures including force, restraint, and discipline against prisoners without regard to whether their behavior was caused by mental illness or whether the punitive measures will exacerbate their mental illness, has already been decided.  Prison officials, doctors, and staff may not use punitive measures against prisoners with mental illness without regard to these factors.  This may not be re-litigated in this case.

Further, although not the subject of Plaintiff's motion *in limine* because they are so clearly established in the case law, it also bears mentioning that there are other relevant *Coleman* findings that may not be re-litigated in the instant case.  These are the basis for Plaintiff's proposed jury instructions 14 and 15 (ECF No. 218 at 20-21), and include the findings that:

- A seriously mentally ill prisoner has a constitutional right to timely treatment at the necessary level of care, including inpatient psychiatric hospitalization.
- A seriously mentally ill prisoner who is gravely ill such that he requires administration of involuntary medication has a constitutional right to receive such treatment.
- The relevant standard of care in California prisons for mental health treatment, including when a prisoner must be transferred to inpatient psychiatric hospitalization, has already been decided and is set forth in the Revised Program Guide, which is the Court-approved legal remedy in the *Coleman* case.

The evidence presented by Defendants at trial in the instant case must be relevant to the question of whether the individual Defendants in this case were deliberately indifferent to Plaintiff's mental health needs,[2] *not* the adequacy or appropriateness of the Program Guide standards or the use of force and discipline policies, procedures, and practices used against Plaintiff.  For example, Defendants purported to offer Defendant Stainer as a "rebuttal expert" to

> [D]ispute Mr. Vail's opinions concerning the adequacy of CDCR's use-of-force policies and procedures, including the use of pepper spray and

---

[2] Some of the central questions to be decided in the instant case are whether the individual Defendants were deliberately indifferent to Plaintiff's mental health needs by: refusing to refer Plaintiff to an inpatient psychiatric hospital in violation of the standards of care set forth in the Revised Program Guide and the Constitution; refusing to initiate involuntary medication when necessary in violation of the Constitution; adopting, implementing, and/or failing to correct unconstitutional policies, procedures, and practices governing punitive measures including use of force and discipline; failing to consider whether Plaintiff's behavior was caused by mental illness or whether the punitive measures imposed on him would exacerbate his mental illness.

PLTF'S SUPPL BRIEF RE: *COLEMAN* ISSUES          -5-

force on mentally-ill inmates; CDCR's training on the use of force on mentally-ill inmates; CDCR's policies and procedures concerning the review process of incidents involving the use of force; and the adequacy and appropriateness of Plaintiff's cell extraction. Stainer's rebuttal testimony will be substantially similar to the testimony he provided at his September 11, 2015 deposition in this case and his August 15, 2013 and October 23-24, 2013 court testimony in *Coleman v. Brown*.

ECF No. 236 at 2:5-11 & Ex. A.[3] But the parties in this case are not re-litigating *Coleman* or the adequacy of CDCR's policies, procedures, and practices. That issue was already squarely decided in *Coleman* and has preclusive effect here. As a result, Defendant Stainer and all other Defendants should be precluded from offering testimony for the purpose of establishing or to the effect that the policies, procedures, and/or practices used during Plaintiff's cell extraction were adequate, appropriate, constitutional, or otherwise met standards of correctional practice.

**III.    Plaintiff's Requested Jury Instructions**

As the Court stated during the pretrial conference, it is necessary that the jury receive some information about the *Coleman* case. Given that the *Coleman* orders lay out important issues of law and legal standards relevant to the case at bar, it is important that the jury be given correct information about what these orders say. Such information will assist the jury in understanding the evidence being presented to it and assist the jury in making the necessary findings of fact in this case. The notice the 1995 *Coleman* order and findings provided to policymaker Defendants in this case is a crucial issue in establishing whether they were deliberately indifferent to Plaintiff's mental health needs. Plaintiff will offer admissible evidence that Defendants were sufficiently aware of the *Coleman* order and findings to support a finding of deliberate indifference here. In order to weigh this evidence, the jury must have a basic understanding of the *Coleman* litigation. For these reasons, Plaintiff proposed a jury instruction explaining relevant parts of the 1995 *Coleman* order. Following discussion with the Court at the pretrial conference, Plaintiff has broken this out into proposed preliminary and final jury instructions, attached hereto as Attachment A, to replace Plaintiff's prior proposed jury instruction 1

---

[3] The Court already ruled in response to Plaintiff's motion *in limine* 4 that Defendant Stainer can offer only his own percipient testimony about Plaintiff's cell extraction based on any review he conducted as part of the ordinary course of his employment—not any review he conducted for the purposes of the *Coleman* evidentiary hearings. Plaintiff uses the example of Stainer's proffered "expert" testimony here because it clearly demonstrates Defendants' intent to offer evidence purporting to show that Defendants' cell extraction policies, procedures, and practices were adequate, despite the fact that this issue has already been conclusively decided.

(ECF No. 218 at 2-3).

**IV.     Notice to Defendants Regarding Unconstitutional Use of Force Policies and Practices**

In opposition to Plaintiff's motion *in limine*, Defendants contend that the 1995 *Coleman* findings about the unconstitutionality of CDCR's punitive measures are not relevant to this case because this case concerns use of OC spray and physical force, and the 1995 decision discussed use of tasers and 37mm guns.  However, the core of the *Coleman* Court's 1995 finding was that "weapons are used on inmates with serious mental disorders without regard to the impact of those weapons on their psychiatric condition, and without penological justification." 28 F.Supp.3d at 1075 (quoting 912 F. Supp. at 1323).  The *Coleman* Court directly forestalled the argument Defendants now seek to make when it noted in its 2014 decision that

> At the underlying [1995] trial the use of force claims centered on the use of tasers and 37mm guns.  The focus of the motion at bar is on the use of OC pepper spray and expandable batons against class members. Plaintiff's fundamental contention is the same: class members suffer from serious mental illnesses which are exacerbated by use of these weapons, use of the weapons causes serious harm, and defendants' current policies, both in design and implementation, continue to demonstrate deliberate indifference to their mental illnesses and the harms caused by use of the weapons.

28 F.Supp.3d at 1075 n.12.  The Court thus emphasized that the violations it had originally found in 1995, and found ongoing in 2014, "were all predicated on findings that defendants' policies and practices governing the use of force, punitive measures, administrative segregation and segregated housing constituted deliberate indifference to class members' serious mental illnesses and the serious and substantial harms to members of the plaintiff class caused by use of such measures."  *Id.* at 1076.

/ / /

/ / /

/ / /

1       If Defendants want to make the argument at trial that the *Coleman* Court's 1995 use of force

2 findings were not sufficient to put them on notice about the inadequacies of their cell extraction and

3 OC spray policies, procedures, and practices, they can do so by offering admissible evidence in

4 support of this argument.  However, they cannot argue that their OC spray and cell extraction policies,

5 procedures, and practices were adequate because that is an issue that has already been decided by the

6 *Coleman* Court.  And they cannot bar the education of the jury on the actual legal findings that the

7 *Coleman* Court made in 1995 concerning the unconstitutionality of CDCR's use of force policies and

8 practices.

10 Dated: April 12, 2017          Respectfully Submitted,

11                  HADSELL STORMER & RENICK LLP

12                  By:  /s/ - Lori Rifkin

13                        Dan Stormer
                          Lori Rifkin

14                        Caitlan McLoon
                        Attorneys for Plaintiff

**ATTACHMENT A**

**PRELIMINARY INSTRUCTION**

In 1995, 2013, and 2014, a federal court examined the California Department of
Corrections' treatment of inmates with serious mental illness, and determined that certain
policies and practices used by the Department of Corrections were unconstitutional.  These three
determinations will be referred to in this case as the *Coleman* findings.

In this case, you must accept the findings of the *Coleman* court as true.  In other words,
you must accept that the policies and practices described below are unconstitutional.

**1995 *Coleman* Findings**

In 1995, a federal court found that the California Department of Corrections was
violating the rights of inmates with serious mental illness to be free from cruel and unusual
punishment under the Eighth Amendment to the U.S. Constitution.  Specifically, the court found
that the following policies and practices demonstrated deliberate indifference to the serious
mental health needs of inmates and violated the Eighth Amendment:

1) Failing to provide timely access to adequate medical care, such as inpatient
hospitalization, resulting in worsening of illness and patient suffering;

2) Failing to provide involuntary medication when necessary for the treatment of
gravely mentally ill inmates;

3) Failing to adopt adequate protocols to govern the use of mechanical restraints on
mentally ill inmates and failing to require appropriate follow-up psychiatric care
after restraints have been used;

4) Failing to adequately train custody staff in identifying the signs and symptoms of
mental illness, resulting in custody staff subjecting mentally ill inmates who act
out to punitive measures without regard to their mental status;

5) Subjecting inmates to the use of weapons without regard to whether their behavior
was caused by a psychiatric condition and without regard to the impact of those
weapons on their psychiatric condition.

**2013 & 2014 *Coleman* Findings**

In 2013, the federal court overseeing the 1995 *Coleman* case found that the California Department of Corrections and Rehabilitation was continuing to violate the rights of inmates with serious mental illness to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.  The court found that the California government officials had failed to remedy the violations found in 1995, and continued to be deliberately indifferent to the serious mental health needs of inmates.

In 2014, the court overseeing the *Coleman* case also made specific findings that the prison policies and practices for use of force continued to violate the Eighth Amendment.  These are the same policies and practices that were used for the cell extraction of Mr. Padilla in 2012.

The court found that the policies and procedures used by California government officials still permitted use of force against seriously mentally ill inmates without regard to a) whether their behavior was caused by mental illness, and b) the serious psychiatric harm caused by the use of this force on inmates with mental illness.

Specifically, the court found that the use of force policies and procedures continued to demonstrate deliberate indifference and violate the Eighth Amendment by:

1)   Allowing for use of weapons including OC pepper spray by custody staff without regard to the impact of those weapons on inmates' psychiatric conditions;

2)   Failing to require consideration of an inmate's ability to conform his or her conduct to the order or directive giving rise to the use of force;

3)   Failing to consider the role of mental illness in an inmate's ability to comply with staff directives; and

4)   Failing to require alternatives to use of force on seriously mentally ill inmates where there is no imminent threat to life and force will exacerbate an inmate-patient's mental illness.

## FINAL INSTRUCTION

At the beginning of the case, I instructed you about the findings made by the *Coleman* Court.  In deciding whether any of the Defendants in this case were deliberately indifferent to a serious mental health need of Mr. Padilla in violation of the Eighth Amendment, you must consider the *Coleman* findings as true. You may rely on the *Coleman* findings as evidence in this case.

I will review the *Coleman* findings with you now.

In 1995, the court found that the California government officials responsible for running the Department of Corrections were deliberately indifferent to the serious mental health needs and risk of harm to inmates by:

1) Failing to provide timely access to adequate medical care, including inpatient hospitalization, resulting in exacerbation of illness and patient suffering;

2) Failing to provide involuntary medication when necessary for the treatment of gravely mentally ill inmates;

3) Failing to adopt adequate protocols to govern the use of mechanical restraints on mentally ill inmates and to require appropriate follow-up psychiatric care after restraints have been used;

4) Failing to adequately train custody staff in identifying the signs and symptoms of mental illness, resulting in custody staff subjecting mentally ill inmates who act out to punitive measures without regard to their mental status;

5) Subjecting inmates to the use of weapons without regard to whether their behavior was caused by a psychiatric condition and without regard to the impact of those weapons on their psychiatric condition.

In 2013 and 2014, the court found that the California government officials responsible for running the California Department of Corrections and Rehabilitation continued to be deliberately indifferent to the serious mental health needs and risk of harm to inmates.

The court found that the policies and procedures used by California government officials still permitted use of force against seriously mentally ill inmates without regard to a) whether their behavior was caused by mental illness, and b) the serious psychiatric harm caused by the use of this force on inmates with mental illness.

Specifically, the court found that the use of force policies and procedures continued to demonstrate deliberate indifference by:

1)      Allowing for use of weapons including OC pepper spray by custody staff without regard to the impact of those weapons on inmates' psychiatric conditions;

2)      Failing to require consideration of an inmate's ability to conform his or her conduct to the order or directive giving rise to the use of force;

3)      Failing to consider the role of mental illness in an inmate's ability to comply with staff directives; and

4)      Failing to require alternatives to use of force on seriously mentally ill inmates where there is no imminent threat to life and force will exacerbate an inmate-patient's mental illness.