1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   JERMAINE PADILLA,                        No. 2:14-cv-1118 KJM CKD

12              Plaintiff,

13        v.                                  ORDER

14   JEFFREY BEARD, et al.,

15              Defendants.

16

17              The court has not previously ruled on plaintiff's motion for reconsideration of the

18   magistrate judge's January 14, 2016 discovery order denying plaintiff's motion for sanctions, or

19   the Prison Law Office's motion to file an amicus brief in support of plaintiff's motion for

20   reconsideration.  The court had submitted the matter, but then on January 27, 2017, at the Final

21   Pretrial Conference, discussed certain aspects of the motion with plaintiff's counsel Lori Rifkin

22   and defense counsel Diana Esquivel.  Following that conference the parties participated in a

23   further settlement conference, at which the case did not settle.  The court thus turns to resolving

24   the pending motion for reconsideration now and, as explained below, the court GRANTS the

25   Prison Law Office's motion and DENIES plaintiff's motion.

26

27

28
                                              1

1     I.      BACKGROUND

2         A.     Litigation History

3            Plaintiff filed the motion for reconsideration and the underlying motion for

4 sanctions in connection with certain interrogatory responses and amendments made on behalf of

5 defendant Jeffrey Beard ("Beard" or "defendant"), Secretary of California Department of

6 Corrections and Rehabilitation (CDCR). Before he became Secretary of CDCR on December 27,

7 2012, Beard worked for CDCR as a consultant in the *Mitchell*[1] class action challenging race-

8 based prison lockdowns and in the *Coleman*[2] class action challenging CDCR's provision of

9 mental health care. *See* Joint Letter at 1, Oct. 13, 2015, ECF No. 59; Interrog. Resp. at 2–3,

10 Rifkin Decl. Ex. C, ECF Nos. 93-2 & 93-3.

11            Beard served his responses to plaintiff's first set of interrogatories on August 3,

12 2015, after receiving multiple, lengthy extensions. *See* Interrog. Resp. at 10; *see also* ECF Nos.

13 43, 48, 50. It is undisputed these responses were not verified, *see* Interrog. Resp. at 11

14 ("VERIFICATION TO FOLLOW / SENT WITHOUT TO AVOID DELAY"), although Federal

15 Rule of Civil Procedure 33(b) requires that interrogatories be answered "in writing under oath"

16 and signed by the answering party, Fed. R. Civ. P. 33(b)(3), (5). At the final pretrial conference,

17 plaintiff's counsel indicated it was the parties' practice to accept unverified discovery responses

18 on the assumption the verification would be forthcoming. Defense counsel did not dispute this

19 was the practice.

20            On September 7, 2015, Beard moved for a protective order to bar plaintiff from

21 taking his deposition, stating, among other things, that

22         Beard was not the Secretary for the California Department of
        Corrections and Rehabilitation during the time relevant to this
23         lawsuit; he has no personal knowledge of the events leading up to
        and following the July 24, 2012 incident at issue in this case; he has
24         no personal knowledge of policies and procedures at issue in this
        matter; and any information he may provide at a deposition will
25

---

26       [1] *Mitchell v. Cate*, 08–01196 (E.D. Cal. filed May 30, 2008), and was closed in June 2016.

27       [2] *Coleman v. Brown*, No. 90-00520 (E.D. Cal. filed April 23, 1990), and is currently
proceeding before the undersigned.
28

> necessarily be obtained from other individuals, who have personal,
> relevant information and who are also Defendants in this case and
> whose depositions are already scheduled to be taken.

ECF No. 51. On October 12, 2015, the parties filed a Joint Letter regarding the motion. ECF No. 59. In the Joint Letter, Beard expressly incorporated his unverified interrogatory responses to support the argument that he had no personal knowledge of plaintiff's July 2012 extraction, plaintiff's mental health treatment at Corcoran, or recommendations for changes to CDCR's use-of-force policies and procedures. *Id.* at 3–4. On October 19, the magistrate judge denied Beard's motion for a protective order and ordered him to submit to deposition no later than October 20, 2015, absent stipulation of the parties to a later date. ECF No. 61.

On October 20, 2015, the parties filed a stipulation and proposed order to modify the court's scheduling order to, among other things, extend the deadline to complete fact discovery from October 20 to December 4, to allow plaintiff to take Beard's deposition after the discovery deadline. ECF No. 62. The parties dispute whether defendants previously agreed they would produce Beard for deposition after the October 20, 2015 fact discovery cut-off if the court denied the motion for a protective order. *See* ECF No. 69. On October 29, 2015, defense counsel indicated defendants would not produce Beard for deposition unless the court granted the parties' request to extend the discovery deadlines. *Id.* at 2. As a result, on November 3, plaintiff moved to compel Beard's deposition on December 1, 2015. ECF No. 64. The parties filed another Joint Letter regarding plaintiff's motion to compel. ECF No. 69. On November 10, the magistrate judge granted in part plaintiff's motion and ordered Beard to submit to deposition no later than December 1, 2015. ECF No. 71. On November 19, this court granted the parties' October 20 stipulation to modify the scheduling order. ECF No. 72.

On November 30, 2015, approximately four months after serving his first set of unverified responses, after the unsuccessful effort to obtain a protective order preventing his deposition, eleven days after the court's granting of the parties' stipulation modifying the scheduling order, and the day before his deposition, Beard's counsel served his amended responses to Interrogatories 4, 9, 10, 11 and 18, as described below. Am. Interrog. Resp., Rifkin

Decl. Ex. D, ECF No. 93-3.  These amended responses included a personal verification by Beard.  *Id.* at 11.

### B.  Amendments to Interrogatory Responses and Related Deposition Testimony

Plaintiff's counsel asked Beard about the amendments to his interrogatory responses at his deposition on December 1.  *See, e.g.*, Beard Dep. 9–16.When asked if he was ever provided with copies of any of the discovery requests in the case, Beard said, "Yes. . . . It seems like some months ago I was provided with something and I made some comments on it and then I was re-provided with documents back about the time that I met with the attorneys a week or so ago."  Beard Dep. 9:4–10:5.  When asked if he had requested that changes be made to the initial responses, he said, "I requested some changes to be made from the original version that I saw, yes."  *Id.* at 9:18–21.  When asked whether, when he requested changes be made the week before his deposition, that was the first time he was requesting those changes, he responded, "No. I made the request for the changes, after I read them a month or so ago I made a request for the changes.  And then I was provided a week or so ago with those changes."  *Id.* at 9:22–10:3.  Plaintiff's counsel then asked, "Prior to your review of those documents a month or so ago had you seen them before?" and he responded, "I don't believe – I don't believe so, no."  *Id.* at 10:4–6.  Beard does not elsewhere in his deposition testimony reconcile the apparent discrepancy arising from his use of the phrase "some months ago" initially, and the different phrase "a month or so ago" thereafter.  As noted above, defendant's counsel had served Beard's initial unverified responses on August 3, 2015, several months before his deposition.

The amendments to Beard's interrogatory responses, served the day before his deposition, are reviewed below, along with Beard's deposition testimony related to the interrogatory responses.

#### 1.  Interrogatory 4

Interrogatory 4 asks Beard to "[i]dentify all inspections or site visits [he has] made to California State Prison-Corcoran, including dates, units visited, purpose, and senior staff and/or consultants present."  Interrog. Resp. at 3.  Beard's initial and amended responses each identify a tour with the *Coleman* Special Master on November 15 and 16, 2011 while Beard was a

consultant for CDCR, and several tours or visits after Beard became Secretary of CDCR.
Interrog. Resp. at 3; Am. Interrog. Resp. at 3.

During his deposition, Beard discussed an additional visit to Corcoran with CDCR's retained *Coleman* experts in April 2012. Beard Dep. 12:16–21. Asked when he had recalled that visit, Beard responded "[a] month or so ago." *Id.* at 14:16–24. When asked why it was not mentioned in his responses, Beard replied as if Interrogatory 4 had not called for the information, saying, "it may not be mentioned specifically. . . If somebody would have asked me, I would have said that I was there at Corcoran . . . as part of the special master tour and I was also there as part of the . . . the defendants' experts." *Id.* at 15:3–13. When asked, "Did anybody ask you that?", Beard said "No." *Id.* at 15:14–15. But the colloquy went no further, and did not probe Beard's reading of the interrogatory's language itself, which did pose the relevant question.

### 2. Interrogatories 9 and 10

Interrogatories 9 and 10 ask whether Beard contends the use of force against Padilla was not excessive, and if so, what facts support his contention. Interrog. Resp. at 5–6. Beard's initial unverified responses stated "[he] has no personal knowledge or information about Plaintiff's July 24, 2012 extraction because he was appointed CDCR Secretary on December 27, 2012[,] [but] based on information and belief, yes." *Id.* Beard later amended and verified his responses to state, "after reviewing the video of Plaintiff's July 24, 2012 extraction, yes," because "the involved staff used reasonable and a [sic] minimal force to carry out a doctor's order to extract Plaintiff from his cell so he could be involuntarily medicated given the status of his mental-health condition . . . ." Am. Interrog. Resp. at 5–6.

When asked about the changes at his deposition, Beard testified he reviewed the video of plaintiff's extraction "a week or so" before the deposition, in preparation. Beard Dep. 7:10–8:24. After seeing the video, he remembered he had seen it before in 2013, when he was a consultant for CDCR. Beard Dep. 16:19–17:25. In 2013, a group of people reviewed videos of a number of extractions in preparation for a hearing in *Coleman*, and Mr. Padilla's extraction was one of those videos. Beard Dep. 16:19–17:22. Accordingly, Beard asked that changes be made to reflect he had some personal knowledge of Padilla's extraction in 2013. Beard Dep. 15:25–

16:11, 29:19–30:23. While Beard uses the word "personal" to describe his knowledge, it is clear from the context of his explanation that the knowledge he considered himself to have was gained from viewing the video of plaintiff's cell extraction the first time in 2013. As noted, the changes made and verified were provided to plaintiff the day before Beard's deposition.

### 3.    Interrogatory 11

Interrogatory 11 asks whether Beard contends the use of five-point restraints on Padilla from July 24 to 26 was reasonable. Interrog. Resp. at 6. Beard initially responded "[he] has no personal knowledge or information about Plaintiff's placement in a five-point restraint because he was appointed CDCR Secretary on December 27, 2012[,] [but] based on information and belief, yes." *Id.* Beard amended his response, with verification, to state he "has no specific knowledge about Plaintiff's placement in five-point restraints from July 24 to 26, 2012, and therefore, lacks the information necessary to reach such a conclusion." Am. Interrog. Resp. at 6.

When asked during his deposition why he directed this change, Beard responded, "Because I was aware that [Padilla] was removed from the cell and put into five-point restraints, but I was not aware and I still am not really aware of the specifics of the five-point restraints." He explained, "I think the difference is, . . . in the one thing it's saying that I had no . . . personal knowledge or information about him being placed in five-point restraint, and I obviously did, but I didn't have a specific knowledge of the specifics of why was he maintained in it or anything else. That's the difference." Beard Dep. 34:20–35:25. Again, the context of Beard's statements clarifies his knowledge is based on having viewed the video in 2013.

### 4.    Interrogatory 18

Interrogatory 18 asks Beard to "[i]dentify any changes to CDCR policies and/or procedures regarding use of force since July 24, 2012." Interrog. Resp. at 9. Beard's initial response stated, in pertinent part, "Defendant has not been personally involved in any recommendations for changes to CDCR's use-of-force policies and procedures. However, based on information and belief, and as permitted by Federal Rule of Civil Procedure 33(d), Defendant refers Plaintiff to the declarations of Michael Stainer filed in *Coleman v. Brown*. . ." *Id.* Beard amended his initial response to omit the phrase, "Defendant has not been personally involved in

any recommendations for changes to CDCR's use-of-force policies and procedures." Am. Interrog. Resp. at 9. This amendment had the effect of conveying a complete reversal in meaning.

When asked during his deposition why he directed the change, Beard effectively confirmed that the first response was incorrect: "Because I was personally involved in some of the recommendations for changes to CDCR's use of force policy." Beard Dep. 36:7–23. He said, "when [he] was secretary and the issues were coming up in the *Coleman* case, [he] work[ed] with staff to make some changes in the use of force policy," *id.* 36:24–37:2, and "they suggested some things, [he] suggested some things," *id.* 38:2–11.

C.    Motions for Sanctions and for Reconsideration

On January 6, 2016, plaintiff moved for the imposition of sanctions against defendant Beard and his counsel. Pl.'s Mot. Sanctions, ECF No. 93. Plaintiff argued sanctions were warranted because Beard's amended interrogatory responses and his deposition testimony, considered along with a declaration Beard had provided in a proceeding in the *Coleman* litigation, demonstrated that his initial responses contained knowing or reckless misrepresentations, and Beard relied on the misinformation in the filings in seeking to bar plaintiff from taking Beard's deposition. *See id.* at 5–6. According to plaintiff's counsel, Beard's motion for a protective order and related actions required her to expend substantial time and resources litigating the right to depose Beard, and Beard's last-minute amendments of his interrogatory responses the day before his deposition required her to review the amended responses and conduct additional research given the apparent contradictions between the two sets of responses. *Id.* at 9–10; Rifkin Decl. ¶¶ 7–9, Pl.'s Mot. Sanctions at 5. Plaintiff's counsel argues Beard's actions also required the court to invest time and resources reviewing and hearing the disputes regarding plaintiff's right to depose Beard. Pl.'s Mot. Sanctions at 10.

Beard opposes the motion, arguing he timely amended his responses, plaintiff's counsel had the opportunity to question him at length about the changes at his deposition, and he "fully explained his reasons for amending his responses." Opp'n Sanctions 1, ECF No. 99.

On January 14, 2016, the magistrate judge, after submitting the motion without hearing, issued a summary order denying the motion without explanation or citation to authority. The order simply said the magistrate judge had reviewed the briefing, the litigation history of the case, defendant's interrogatory responses and amendments, and the transcript of defendant's deposition, and found "no basis for imposition of sanctions." Order, Jan. 14, 2016, ECF No. 100 ("Order Den. Sanctions").

On January 28, 2016, plaintiff filed the instant motion for reconsideration by this court of the magistrate judge's January 14, 2016 ruling. Mot. Recons., ECF No. 103. On January 28, 2016, the Prison Law Office filed a motion seeking to file an amicus brief in support of plaintiff's motion, along with its proposed brief. Amicus Mot., ECF No. 104; Proposed Amicus Brief, ECF No. 104-1. On February 4, 2016, defendant filed an opposition to the motions. Opp'n, ECF No. 106.

II.     MOTION TO FILE AMICUS BRIEF

Federal district courts possess the inherent authority to accept amicus briefs. *See, e.g.*, *Jamul Action Comm. v. Stevens*, No. 13–01920, 2014 WL 3853148, at *5 (E.D. Cal. Aug. 5, 2014). "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Sonoma Falls Developers, LLC v. Nev. Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003) (internal quotations omitted); *see also Nat'l Petrochemical & Refiners Ass'n v. Godstene*, No. 10–163, 2010 WL 2228471, at *1 (E.D. Cal. June 3, 2010) (same).

Here, the Prison Law Office has shown it has over thirty years of experience representing prisoners in civil rights actions in California and elsewhere. *See* Amicus Mot. at 1–2. Because the case management and litigation of prisoner civil rights actions has potential ramifications beyond the parties directly involved, the court GRANTS the Prison Law Office's motion and accepts its proposed amicus brief, ECF No. 104-1, deeming it filed.

8

In the amicus brief, the Prison Law Office argues abusive discovery tactics "create substantial financial burden, delay, and other undue hardship in prisoner litigation," and "ha[ve] the effect of reducing the already-narrow pool of attorneys willing and able to take on individual prisoner representation." *Id.* at 2.

III.   MOTION FOR RECONSIDERATION

A.   Legal Standard Generally

Courts review motions to reconsider a magistrate judge's nondispositive pretrial order under the "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also* Local Rule 303(f). "A finding is clearly erroneous when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id.* at 623.

"The contrary to law standard allows independent, plenary review of purely legal determinations by the magistrate judge." *Estate of Stephen E. Crawley v. Robinson*, No. 13–02042, 2015 WL 3849107, at *2 (E.D. Cal. June 22, 2015) (internal quotations marks omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quoting *Knutson v. Blue Cross & Blue Shield of Minn.,* 254 F.R.D. 553, 556 (D. Minn. 2008)).

In reviewing a motion for reconsideration, the district court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991) (internal quotations marks omitted). Here, where the deciding magistrate judge's order is so dissatisfying in its absence of explanation, it is difficult to discern the substance if any of her judgment. Given the late date of this order, rather than return the matter to the magistrate judge for clarification, this court reviews her conclusion in light of the law and the factual and procedural record. In doing so, the court notes that "[t]o succeed [on a motion for reconsideration], a party must set forth facts or law of a strongly convincing nature to induce the

1  court to reverse its prior decision." *Enriquez v. City of Fresno*, No. 10–0581, 2011 WL 1087149,

2  at *1 (E.D. Cal. Mar. 23, 2011).

3      B.    "Contrary to Law"

4          The primary sources of authority to impose sanctions as requested by plaintiff's

5  motion are Federal Rules of Civil Procedure 26 and 37, 28 U.S.C. § 1927, and the court's

6  inherent power.  Rule 26(e)(1) requires a party to supplement or correct a response to an

7  interrogatory "in a timely manner if the party learns that in some material respect the disclosure

8  or response is incomplete or incorrect, and if the additional or corrective information has not

9  otherwise been made known to the parties during the discovery process or in writing."  Fed. R.

10  Civ. P. 26(e)(1)(A).  If a party fails to comply with Rule 26(e), Rule 37 mandates that a court

11  impose sanctions, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

12  37(c)(1).

13          Title 28 U.S.C. § 1927 provides: "Any attorney . . . who so multiplies the

14  proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

15  personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

16  conduct."  "The imposition of sanctions under § 1927 requires a finding of bad faith."  *Pac.*

17  *Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (citation

18  omitted).

19          The Ninth Circuit also has recognized a court's inherent power to levy sanctions,

20  including attorneys' fees, for a broad range of willful improper conduct.  *See Fink v. Gomez*, 239

21  F.3d 989, 992 (9th Cir. 2001) (discussing *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)

22  and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).  This includes when a party "has acted in

23  bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or

24  has taken actions in the litigation for an improper purpose."  *Id.*  However, "[b]ecause of their

25  very potency, inherent powers must be exercised with restraint and discretion."  *Chambers*, 501

26  U.S. at 44.

27          Here, plaintiff has not shown the magistrate judge's conclusion is contrary to law.

28  Plaintiff has not demonstrated the magistrate judge failed to apply or misapplied the Federal

Rules of Civil Procedure, because plaintiff has not established Beard failed to amend his responses in a timely manner under Rule 26(e). Although the amendments could have been more timely, and Beard's deposition testimony is somewhat vague, it appears he made the amendments within a few weeks of Beard's recognizing the need for amendment, shortly after the parties concluded litigation of defendants' unsuccessful effort to protect Beard from being deposed. Plaintiff has not pointed to a pattern of other, unrelated lapses in compliance with discovery rules, which given Ninth Circuit authority could affect the court's assessment. *Cf. Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411–14 (9th Cir. 1990); *Wanderer v. Johnston*, 910 F.2d 652, 653–56 (9th Cir. 1990). Because the magistrate judge's conclusion was not contrary to the requirements of Rule 26(e), the question of whether Rule 37 (c) applies is moot.

With respect to 28 U.S.C. § 1927, plaintiff has not shown the magistrate judge's decision ran contrary to the provisions of that statute. Specifically plaintiff has not shown Beard's counsel multiplied the proceedings "unreasonably and vexatiously" by meeting the high standard of bad faith. Rather, it appears in this hotly contested case that defendants would have sought to preclude Beard's deposition in any event.

Finally, the magistrate judge's decision is not contrary to the cases cited by plaintiff regarding a court's inherent power to levy sanctions, particularly given that the court's power is discretionary. While as noted it is difficult to discern precisely how the magistrate judge exercised her discretion, there is nothing before the court to indicate she affirmatively abused her discretion as that term is used in this context.

Even if the court were to reconsider the questions raised by plaintiff's motion for sanctions in the first instance, it cannot say it would reach a different result.

C.      "Clearly Erroneous"

Having found the magistrate judge's conclusions are not contrary to law, the court may only grant plaintiff's motion if the magistrate judge's decisions are clearly erroneous based on the record.

Plaintiff argues the litigation history and Beard's amendments to his interrogatory responses establish that Beard's initial responses contained knowing or reckless

11

misrepresentations. *See* Pl.'s Mot. Sanctions. at 5.  .  Although the magistrate judge ruled for plaintiff and compelled Beard's deposition, plaintiff's counsel argues defendants' handling of discovery matters required plaintiff to expend substantial time and resources litigating plaintiff's right to depose Beard as a threshold matter, and then additional time preparing for deposition once she received the amended interrogatory responses. *See* Mot. Recons.at 4, 6.

In response, Beard points to the declaration of his counsel, averring that she did not purposefully or recklessly misrepresent any information or present false information. Esquivel Decl. ¶ 2, ECF No. 99.  Beard explained the reasons for the changes to his responses at his deposition, s*ee* ECF No. 106, and argues he timely amended his responses and plaintiff has not shown how he was harmed or prejudiced by the changes.  ECF No. 99.  Esquivel's declaration explains that she determined the amendments were necessary while meeting with Beard to prepare for his deposition during the week of November 16, 2015.  Esquivel Decl. ¶ 4.. She represents that she immediately prepared the amended responses and submitted them for review through the multi-level CDCR review process.  *Id*.  She was out of the office during the week of November 23 and did not have access to her mail.  *Id*. ¶ 5.  When she returned on November 30, she found Beard's verification of the amendments, dated November 24, and immediately served the amended responses on plaintiff by email that day, November 30.  *Id*. ¶¶ 5–6.  At Beard's deposition on December 1, plaintiff questioned Beard at length about the amendments.  ECF No. 99 at 2, 7.

The court finds plaintiff has not submitted sufficient evidence to allow this court to conclude the magistrate judge's conclusion was clearly erroneous, that in effect Beard's or his counsel's actions were not taken in bad faith or for an improper purpose.

Beard's explanation that he amended his responses to Interrogatories 9 and 10 after reviewing the video of Padilla's extraction shortly before his deposition is not unreasonable. Although his deposition testimony does not fully explain the reasoning behind the other amendments—especially the amendment to Interrogatory 18—the amendments do not on their face or as explained by Beard at deposition demonstrate the initial responses were knowingly false or misleading, as opposed to the result of an oversight, negligence, or a change in opinion.

The absence of a timely verification of the first set of interrogatory responses by Beard himself is troubling, and in the absence of verification plaintiff's counsel reasonably relied on the unverified responses given the parties' practice and defendants' own reliance on the unverified responses in litigating the motion for protection from deposition. *See Jack v. Trans World Airlines*, 854 F. Supp. 654, 660 (N.D. Cal. 1994) (receiving party reasonably relied on unverified responses given opposing party's more clear representations than here). That said, based on the record before the court, Beard appears to have amended his responses in a timely enough manner, even if in the nick of time. Importantly plaintiff had the opportunity to question Beard about the changes during his deposition. *Id.* ("person offering the changed testimony . . . should explain why his or her testimony has changed").

Moreover, Beard's deposition was completed more than eight months before the parties filed their summary briefing. In his briefing, while plaintiff could have raised questions about Beard's credibility based on his changed discovery responses, plaintiff did not. In the summary judgment briefing, plaintiff relied in a number of respects on the deposition testimony Beard provided. *See, e.g., generally*, Decl. of Lori Rifkin in Supp. Pl.'s Mot. for Partial Summ. J., ECF No. 131; Pl.'s Am. Mem. In Supp. Summ. J. & Undisputed Facts, ECF Nos. 141, 141-1.

Having reviewed the parties' briefing, the Prison Law Office's amicus brief, the litigation history of the case, Beard's initial and amended verified responses to the interrogatories, the transcript of Beard's deposition testimony, and the magistrate judge's paltry order, the court finds the magistrate judge's conclusion that sanctions are not warranted is not clearly erroneous. Even if reconsidering that order, this court would reach the same conclusion for the reasons set forth above.

IV.    CONCLUSION

The Prison Law Office's motion to file an amicus brief is GRANTED and the proposed amicus brief docketed as ECF No. 104-1 is deemed FILED.

Plaintiff's motion for reconsideration of the magistrate judge's January 14, 2016 discovery order is DENIED.

IT IS SO ORDERED.

This order resolves ECF Nos. 103 and 104.

DATED:  April 14, 2017.

_____
UNITED STATES DISTRICT JUDGE